UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 15-CR-20574-DPH |
| Plaintiff, | HON. DENISE P. HOOD |
| v. | OFFENSE(S): 18 U.S.C. §§ 1962(d) |
| D-8 AKEEM ARTEAZE WALKER,<br>a.k.a "Keem" | MAXIMUM PENALTIES:<br>Count One – Up to 20 years<br>Count Three – Mand. Min. 7 years up<br>to Life |
| Defendant. | |
| _____/ | MAXIMUM FINE: $250,000 |

## GOVERNMENT'S SENTENCE MEMORANDUM

The United States submits the following sentence memorandum as to

Defendant AKEEM WALKER.

I.    Factual and Procedural History

In late 2011, the Band Crew street gang was created through a "merger" of

several smaller gangs including CMH, YNC, PBF and FOE Life gangs at a Burger

King located inside their territory.   The "Band Crew" or "22 Band Crew"

established a territory on the northwest side of Detroit.   It consisted of the area

around Seven Mile Road, between Southfield Freeway, West McNichols Road,

Greenfield Road and Eight Mile Road.   While the Band Crew did not maintain an

absolute hierarchical structure, the leaders of each subgroup who had influential roles over the other gang members were identified as "CEOs" and "Co-CEOs." Band Crew members also continued to identify themselves as members of these smaller gangs.   Band Crew members signified their involvement in the Band Crew with gang related tattoos, wearing particular clothing, displaying gang signs, advocating for the release of incarcerated gang members, or "tagging" (spray painting) buildings with gang insignia related to Band Crew or the smaller groups.

The Band Crew established itself in an effort to control the territory it had claimed, to protect its members from rival gangs, and to generate income from selling controlled substances, primarily marijuana, and through theft and robbery offenses.

The Band Crew often engaged in taking over area gas stations, to "hang out", steal from the gas station owners, threaten or rob customers, and, on at least three occasions known to law enforcement, engage in the discharge of weapons in exchanges with other people or during other criminal conduct.   During searches of social media accounts of the Band Crew members, law enforcement recovered images that depicted numerous Band Crew members in possession of handguns, long guns and semi-automatic rifles. The use of weapons by and against Band

Crew members culminated in the shooting of a rival RTM gang member, a retaliatory shooting of Band Crew member "Squid," the attempted murder of a young man, "Y.B.," who was shot in the chest by Band Crew members, and the armed robbery and shooting at "C.H." by others.   The images depicted on the members' social media accounts also advocated the release of other members who had been convicted for discrete state offenses as part of their gang involvement.

Defendant WALKER, originally a member of the "Constantly Making Hundreds (CMH)" gang later became a member of Band Crew when CMH merged with some smaller groups.   During the time he was a part of the Band Crew, WALKER and others participated in various criminal acts that were a part of the day to day existence of the gang.

Through searches of social media accounts, law enforcement officers seized evidence specifically involving WALKER that clearly demonstrated his involvement with Band Crew.   The information obtained from the social media accounts also confirmed that WALKER was no stranger to the weapons that were an integral component of Band Crew membership.






Among his other more general involvement in the gang, WALKER's individual

offenses included carrying a concealed weapon, armed robbery, and marijuana

sales.

On November 1, 2016, WALKER appeared in Court, on writ and with counsel, before your honor and tendered a plea of guilty to Counts 1 and 3 of the First Superseding Information pursuant to a Rule 11 Plea Agreement.   He is scheduled to be sentenced on March 17, 2017.

II.     <u>Sentencing Guideline Calculations and Relevant 3553(a) Factors</u>

Congress has provided and pursuant to 18 U.S.C. §3553(a), relevant objectives and factors to be considered by sentencing courts in imposing a sentence sufficient, but not greater than necessary.   Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution.

A.     The Advisory Guideline Range

"This court and others have repeatedly held since Booker that district judges can find the facts necessary to calculate the appropriate Guidelines range using the same preponderance of the evidence standard that governed prior to Booker." United States v. Lacefield, 250 Fed.Appx. 670, 676 (6th Cir. 2007), citing United States v. Ferguson, 456 F.3d 660, 665 (6th Cir.2006) citing, United States v. Stone, 432 F.3d 651, 654-55 (6th Cir. 2005).

In United States v. Gall, 552 U.S. 38, 41 (2007), the United States Supreme Court provided a template for sentencing proceedings in the district court.   The Court held that a district court should begin sentencing proceedings by correctly calculating the applicable guidelines. Id. at page 47.   The Court also held that while the district court should begin all sentencing proceedings by correctly calculating the applicable guidelines range, after doing so, both parties should be provided with an opportunity to argue for whatever sentence they deem appropriate.   Finally, the court should then consider all the statutory factors under §3553(a) to determine whether they support the sentence requested by either party prior to imposing sentence.

6

The Rule 11 Plea agreement between the government and Mr. Walker contemplated a sentencing guideline range of 121 - 130 months, resulting from the defendant's calculated Offense Level 19, Criminal History level III and a mandatory 84 months on Count 3.   The United States Probation Department has calculated a sentencing guideline range of 130-141 months, Offense Level 21 and Criminal History Level III, as a result of an overt act that was included as relevant conduct in the Indictment.   While the government understands and agrees with probation's rationale, the United States asks the Court to accept the guidelines as calculated by the parties in the Rule 11 Plea Agreement and consider a variance to a guideline range of 121-130 months.

B.      Title 18 U.S.S.G. §3553(a) - Imposition of a Sentence

Nature and Circumstances of the Offense and the History
and Characteristics of the Defendant 18 U.S.C. §3553(a)(1)

The nature and circumstances of the offense for which Mr. Walker has been convicted are detailed in Section I above and in the pre-sentence report prepared by the United States Probation Department.   The offense in this case is a violation of federal law that focuses on the dangers associated with both criminal activity and

the magnification of that conduct through the support and encouragement of like-minded criminal co-conspirators.

At age 15, Mr. Walker became involved in criminal conduct as a juvenile. Although afforded the benefit of a probationary sentence, he was unable to correct his behavior and his probation was violated. Just over two years later Walker was arrested in connection with his illegal possession of a loaded, Colt .45 caliber pistol. He was sentenced under the Holmes Youthful Trainee Act and given the opportunity to complete that period of supervision without a felony record. Nevertheless – he continued to be a part of Band Crew following the offense, and, in January of 2015, his conduct escalated and he was involved in the armed robbery of a patron of a gas station of his sunglasses.

Walker's additional contact with the criminal justice system occurred in September of 2015 when he was ticketed for two misdemeanor offenses, one of which was marijuana distribution, a component offense of Band Crew's enterprise. Walker ignored those summonses and bench warrants were issued for his arrest.

The society and support for criminal activity that exists in a gang apparently remained important to Smith, even after he had been arrested and charged or crimes committed as part of his involvement. Walker's possession of a firearm in

2014 was while he was with other Band Crew members.   It was that illegal possession of a firearm that caused him to become a part of the adult criminal justice system.   Nevertheless, with the support and encouragement of his fellow Band Crew members, he ignored the real possibility that he would find his way back to the criminal justice system.   His level of confidence in his criminal association was so strong that he flaunted it through social media.   The images recovered by ATF agents during the course of their investigation could not speak more clearly for themselves.

Walker now has weapons and robbery related convictions.   He made a life altering decision to align himself with a group bent on filling their time with criminal activity. This conviction and Walker's past conduct both evidence a lack of respect for the law that appears to exist with his other gang members.   It is that attitude and conduct that the government urges the court to bear in mind when considering the nature and characteristics of the defendant to decide the appropriate sentence.

The pre-sentence report reveals that the defendant was raised by his mother and step-father with limited contact with his father.   Walker advised the probation department that his physical needs were met and that his family had a stable

9

financial situation. He was without physical, mental or emotional abuse. PSR ¶58-

60.   Given the relatively stable family life that he had when he was young, the life

he has chosen to pursue now and the wasted potential he may possess – his

criminal history and continued choice to violate the law is a serious concern.

C.      Seriousness of the Offense, Promoting Respect for Law,
        and Providing Just Punishment 18 USC §3553(a)(2)(A)

Walker's involvement in both CMH and Band Crew evidence the

seriousness of racketeering offenses and Walker's lack of respect for the law.   The

existence of a criminal "family" or group like Band Crew raises the actual and

potential danger of all of the participants.   Instead of finding and surrounding

himself with people who might dissuade such conduct, Walker associated with

those who supported and encouraged Band Crew's criminal activities.

The seriousness of this offense is societal.   There are overt acts of violence

on Mr. Walker's part. The gang's activity overall resulted in greater violence.   Mr.

Walker's continued violations speak clearly to his decision to ignore the law,

please himself, and abandon the opportunity and promise he possessed as a young

man. A sentence that provides just punishment for Mr. Walker will hopefully

convince him that his choice to engage in crime and to surround himself with

others who have a similar philosophy will not be tolerated as well as encourage others to a respect for the law over their own individual desires.

Walker's conviction for the possession of a firearm during a crime of violence carries a mandatory minimum sentence of 7 years.   The United States urges the Court to give independent consideration to the Racketeering Conspiracy that Walker also pleaded guilty to, the guidelines of 37-46 months associated with it and fashion a sentence that appropriately punishes that offense, in addition to and independent of the firearm count. They are separate offenses and the sentence imposed should recognize the seriousness of each one.

D.     Deterrence: 18 USC §3553(a)(2)(B)

The second consideration of 3553(a)(2)(B) is the need to deter such conduct by others.   The conduct engaged in by defendant Walker involved others and a combined effort to engage in acts of violence, possess weapons, and distribute controlled substances. More importantly, Walker's contact with the court as a juvenile did not deter him from criminal conduct. Walker has not yet demonstrated that being under supervision by a court or following a period of custody provides much significant deterrence to future criminal conduct.   The sentence imposed by this court will hopefully serve as a deterrent to this defendant in the future, and to

11

others who contemplate engaging in such conduct.

Sentencing in the federal system has long contemplated the ability to provide both specific and general deterrence.   United States v. Phinazee, 515 F.3d 511 (6th Cir. 2008); citing United States v. Turner, 173 Fed. Appx. 402, (6th Cir. 2006). See also United States v. Blackwell, 459 F.3d 739, 774 (6th Cir. 2006), affirming a defendant's sentence where the district court in its §3553 analysis stated that it doubted the defendant would ever engage in the conduct again, but that a primary sentencing factor was the need "to deter other similarly situated individuals from engaging in the conduct".

E.    Protecting the Public; 18 U.S.C. §3553(a)(2)( C)

As to protecting the public from further crimes of this defendant, Mr. Walker through counsel advises that he will avoid a return to criminal activity upon his release from prison.   The United States is hopeful that his claim is sincere and that he will elect to never engage in criminal conduct again.   For any period of time that he is incarcerated, that is guaranteed.   More importantly, his activities will be subject to monitoring while on supervised release.   He claims that he has grown and learned from his past decisions. However, his prior performance while on probation suggests that he alone can determine whether or

12

not he will succeed this time. Key to that success will be the understanding that another violent felony conviction will lead to an even greater period of incapacitation.   He will hopefully take advantage of any program assistance that is provided by the probation department while on supervision.

If Mr. Walker's sentence occasions positive results, society will be further protected and his family will benefit from a future that is crime free.   He will be able to enjoy his family whose concern for him and support for him are evident in their letters to the Court.   He will be physically away from them while he serves his sentence, but once that is completed, he can begin to fashion a life as a law-abiding member of his family.   If not, and he returns to the illegal activity, Mr. Walker will sacrifice his freedom, and sharing his family's companionship, love and support again.   That choice, as it always has been, is his.   In the meantime, a prison sentence to be followed by a period of supervised release will provide appropriate protection to the public, appropriately punish him for the crimes he has committed, and hopefully, serve as a deterrent to Walker and others.

III.   Conclusion / Government Recommendation

The United States certainly recognizes the ability and responsibility of the Court to fashion a sentence within, or perhaps, outside of a particular sentencing

guideline range.   The United States respectfully requests that the Court consider

all of the above in determining both the sentence for Defendant Akeem Walker, at

84 months on Count Three – Use of a Firearm During a Crime of Violence,

consecutive to 37 months on Count One - Racketeering Conspiracy and followed

by a period of supervised release of at least 3 years.

                                  Respectfully submitted,

                                  DANIEL L. LEMISCH
                                  Acting United States Attorney

                                  /s/ *John N. O'Brien II*
                                  John N. O'Brien II
                                  Assistant United States Attorney
                                  211 W. Fort Street, Suite 2001
                                  Detroit, Michigan 48226

March 15, 2017                    313-226-9715

CERTIFICATE OF SERVICE

I hereby certify that on Wednesday, March 15, 2017, I electronically filed the

foregoing document with the Clerk of the Court using the CM/ECF system, which

will send notification of such filing to the following:

Michael S. Friedman
friedman364@aol.com

/s/ *John N. O'Brien II*
John N. O'Brien II
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
313-226-9715
P39912

15