UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Hon. Denise P. Hood |
| | No. 15-CR-20574-DPH |
| Plaintiff, | |
| | **Offense(s):** 18 U.S.C. §§ 1962(d), and |
| v. | 924(c) |
| | |
| D-7 MARIO PERKINS | **Maximum Penalties:** |
| | Count One – Up to 20 years |
| | Count Eight – Mand. Min. 10 years, up |
| Defendant. | to Life |
| _____/ | **Maximum Fine:** $250,000 |

## GOVERNMENT'S AMENDED SENTENCE MEMORANDUM

The United States submits the following sentence memorandum as to Defendant MARIO PERKINS.

I.  Factual and Procedural History

In late 2011, the Band Crew street gang was created through a "merger" of several smaller gangs including CMH, YNC, PBF and FOE Life gangs at a Burger King located inside their territory.  The "Band Crew" or "22 Band Crew" established a territory on the northwest side of Detroit.  It consisted of the area around Seven Mile Road, between Southfield Freeway, West McNichols Road, Greenfield Road and Eight Mile Road.  While the Band Crew did not maintain an

absolute hierarchical structure, the leaders of each subgroup who had influential roles over the other gang members were identified as "CEOs" and "Co-CEOs." Band Crew members also continued to identify themselves as members of these smaller gangs. Band Crew members signified their involvement in the Band Crew with gang related tattoos, wearing particular clothing, displaying gang signs, advocating for the release of incarcerated gang members, or "tagging" (spray painting) buildings with gang insignia related to Band Crew or the smaller groups.

The Band Crew established itself in an effort to control the territory it had claimed, to protect its members from rival gangs, and to generate income from selling controlled substances, primarily marijuana and through theft and robbery offenses.

The Band Crew often engaged in taking over area gas stations, to "hang out", steal from the gas station owners, threaten or rob customers, and on at least three occasions known to law enforcement, engage in the discharge of weapons in exchanges with other people or during other criminal conduct. During searches of social media accounts of the Band Crew members, law enforcement recovered images that depicted numerous Band Crew members in possession of handguns, long guns and semi-automatic rifles. The use of weapons by and against Band

Crew members culminated in the shooting of a rival RTM gang member, a retaliatory shooting of Band Crew member "Squid," the attempted murder of a young man, "Y.B." who was shot in the chest by Band Crew members, and the armed robbery and shooting at "C.H." by others. The images depicted on the members' social media accounts also advocated the release of other members who had been convicted for discrete state offenses as part of their gang involvement.

Defendant PERKINS, originally a member of the "Family Over Everything (FOE)" gang later became an associate of Band Crew through the merger of the smaller groups. During the time he was associated with the Band Crew, PERMINS and others participated in various criminal acts that were a part of the day-to-day existence of the gang.

Through searches of social media accounts, law enforcement officers seized evidence specifically involving PERKINS, which clearly demonstrated his involvement with Band Crew. The information obtained from the social media accounts and police incidents that that he was involved in, also confirmed that PERKINS, like others with whom he was associating, was no stranger to the weapons that were an integral component of the gang membership.

3



Among his other more general involvement in the gang, PERKINS's individual offenses included carrying weapons, theft and robbery, and marijuana distribution.

On December 8, 2015, PERKINS appeared in Court, on writ from Oakland County and with counsel, tendered a plea of guilty before your honor to Counts 1 and 8 of the Indictment pursuant to a Rule 11 Plea Agreement. He is scheduled for sentencing on May 18, 2017.

II.     Sentencing Guideline Calculations and Relevant 3553(a) Factors

Congress has provided and pursuant to 18 U.S.C. §3553(a), relevant objectives and factors to be considered by sentencing courts in imposing a sentence sufficient, but not greater than necessary. Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant;

4

(2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution.

A.     The Advisory Guideline Range

"This court and others have repeatedly held since Booker that district judges can find the facts necessary to calculate the appropriate Guidelines range using the same preponderance of the evidence standard that governed prior to Booker." United States v. Lacefield, 250 Fed.Appx. 670, 676 (6th Cir. 2007), citing United States v. Ferguson, 456 F.3d 660, 665 (6th Cir.2006) citing, United States v. Stone, 432 F.3d 651, 654-55 (6th Cir. 2005)

In United States v. Gall, 552 U.S. 38, 41 (2007), the United States Supreme Court provided a template for sentencing proceedings in the district court.   The Court held that a district court should begin sentencing proceedings by correctly calculating the applicable guidelines. Id. at page 47.   The Court also held that

5

while the district court should begin all sentencing proceedings by correctly calculating the applicable guidelines range, after doing so, both parties should be provided for an opportunity to argue for whatever sentence they deem appropriate. Finally, the court should then consider all the statutory factors under §3553(a) to determine whether they support the sentence requested by either party prior to imposing sentence.

The Rule 11 Plea agreement between the government and Mr. Perkins contemplated a sentencing guideline range of 177 -191 months, resulting from the defendant's calculated Offense Level 24, Criminal History level II and a mandatory 120 months on Count 8.   The United States Probation Department has calculated a sentencing guideline range of 228 - 255 month as they had determined the base offense level to be 30.   The United States understands the basis upon which that range was reached by probation but requests that the court accept the agreement by the parties in considering the ultimate sentence.

B. Title 18 U.S.S.G. §3553(a) - Imposition of a Sentence

> Nature and Circumstances of the Offense and the History
> and Characteristics of the Defendant 18 U.S.C. §3553(a)(1)

The nature and circumstances of the offense for which Mr. Perkins has been

convicted are detailed in Section I above and in the pre-sentence report prepared by the United States Probation Department. The offense in this case is a violation of federal law that focuses on the dangers associated with both criminal activity and the magnification of that conduct through the support and encouragement of like-minded criminal co-conspirators.

Of significant concern to the government is that weapons were a common component of the events in which Perkins was involved. At the time of his arrest, there were allegations that shots were fired at Perkins and Mr. Thompson, and that Thompson, with Mr. Perkins assistance, returned fire at the house of people that Thompson thought were responsible.

At age 16, Mr. Perkins became involved in criminal conduct as a juvenile. Although afforded the benefit of a probationary sentence, he was unable to reform his behavior. Just over two years later Perkins was arrested in connection with his illegal possession of a loaded Tech 9 pistol. He was sentenced to 240 days in the Oakland County Jail. Fortunately, for Perkins, his arrest by the Southfield Police Department in July of 2015 ended his involvement in the Band Crew.

The society and support for criminal activity that exists in a gang apparently remained important to Perkins, even after his contact with the criminal justice

system as a juvenile. It was because of his illegal possession of a firearm that he became a part of the state adult criminal justice system. With the support and encouragement of their fellow Band Crew members, the group ignored the real possibility that they would find their way back to the criminal justice system. Perkins now has weapons and robbery related convictions. He made a life altering decision to align himself with a group bent on filling their time with criminal activity.

The pre-sentence report reveals that the defendant was raised by his mother and with limited or no contact with his father. Perkins advised the probation department that his physical needs were met and that his family had a stable financial situation. He was without physical, mental, or emotional abuse. He quit school in the 10th grade.

C.   Seriousness of the Offense, Promoting Respect for Law,
     and Providing Just Punishment 18 USC §3553(a)(2)(A)

Perkins' involvement with the Band Crew does evidence the seriousness of racketeering offenses. The existence of a criminal enterprise like Band Crew raises the actual and potential danger of all of the participants. Instead of finding and surrounding himself with people who might dissuade such conduct, Perkins

associated with those who supported and encouraged Band Crew's criminal activities.

The seriousness of this offense is societal. The gang's activity overall resulted in greater violence. Mr. Perkins' choices speak to his decision to ignore the law, please himself, and abandon the opportunity and promise he possessed as a young man. A sentence that provides just punishment for Mr. Perkins will convince him that his choice to engage in crime, and surrounding himself with others with a similar philosophy, will not be tolerated as well as encourage others to a respect for the law over their own individual desires.

D.     Deterrence: 18 USC §3553(a)(2)(B)

The second consideration of 3553(a)(2)(B) is the need to deter such conduct by others. The conduct engaged in by defendant Perkins and his co-defendants involved others, and a combined effort to engage in acts of violence, possess weapons, and distribute controlled substances. Unfortunately, Perkins' contact with the court as a juvenile did not deter him from criminal conduct. The sentence imposed by this court will hopefully serve as a deterrent to this defendant in the future, and to others who contemplate engaging in such conduct.

Sentencing in the federal system has long contemplated the ability to provide both specific and general deterrence. <u>United States v. Phinaze</u>e, 515 F.3d 511 (6th Cir. 2008); citing <u>United States v. Turner</u>, 173 Fed. Appx. 402, (6th Cir. 2006). See also <u>United States v. Blackwell</u>, 459 F.3d 739, 774 (6th Cir. 2006), (affirming a defendant's sentence where the district court in its §3553 analysis stated that it doubted the defendant would ever engage in the conduct again, but that a primary sentencing factor was the need "to deter other similarly situated individuals from engaging in the conduct".

E.     Protecting the Public; 18 U.S.C. §3553(a)(2)( C)

As to protecting the public from further crimes of this defendant, Mr. Perkins through counsel and in his statement to probation, advises that he will avoid a return to criminal activity upon his release from prison.  The United States is hopeful that his claim is sincere and that he will elect to never engage in criminal conduct again.  For any period of time that he is incarcerated, that is guaranteed. More importantly, his activities will be subject to monitoring while on supervised release.  He claims that he has grown and learned from his past decisions.  The United States has observed evidence to support this claim over the last 18 months. Key to that success will be the understanding that another violent felony conviction

will lead to an even greater period of incapacitation. He will hopefully take advantage of any program assistance that is provided by the probation department while on supervision.

If Mr. Perkins' sentence occasions positive results, society will be further protected and his family will benefit from a future that is crime free.   He will be able to enjoy his family whose concern for him and support for him are clearly evident in their letters to the Court.   He will be physically away from them while he serves his sentence, but once that is completed, he can begin to fashion a life as a law-abiding member of his family.   If not, and he returns to the illegal activity, Mr. Perkins' will sacrifice his freedom and sharing his family's companionship, love, and support again.

   III.   Conclusion / Government Recommendation

The United States certainly recognizes the ability and responsibility of the Court to fashion a sentence within, or perhaps, outside of a particular sentencing guideline range.   The United States respectfully requests that the Court consider

all of the above in determining both the sentence for Defendant Mario Perkins, accept a sentencing guidelines range of 177-191 months as contemplated by the parties and follow any period of incarceration imposed with a period of supervised release of 3 years.

                              Respectfully submitted,

                              DANIEL L. LEMISCH
                              Acting United States Attorney

                              /s/ *John N. O'Brien II*
                              John N. O'Brien II
                              Assistant United States Attorney
                              211 W. Fort Street, Suite 2001
                              Detroit, Michigan 48226
May 17, 2017                 313-226-9715
                              P39912

CERTIFICATE OF SERVICE

I hereby certify that on Wednesday, May 17, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Darrell Thompson
dtlaw5@gmail.com

Daniel J. Reid
reidandreidpc@aol.com

/s/ *John N. O'Brien II*
John N. O'Brien II
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
313-226-9715